*1261 OPINION.
Hill:
The sole issue before us.is whether or not amounts credited to decedent’s account in the .fund are taxable to decedent and his surviving wife, Hope C. Berry, for 1936, the year in which decedent died.
Petitioner contends that the credits to decedent’s account were taxable to decedent in the years credited to his account by the trustees of the fund and not .in 1936. She urges that those amounts were “made available” to decedent and could have been withdrawn by him at any time subsequent to 1926, the year in which decedent completed his tenth year of participation in the fund. Petitioner further contends that, in any event, the shares of Sears, Roebuck & Co. stock were made available to decedent when he pledged the stock to the bank in 1931 or to the trustees of the fund in 1934 and 1935. Petitioner contends, in the alternative, that the fund was in fact a plan for the purchase of stock so that decedent merely obtained the benefit of a bargain purchase. Petitioner asserts that the death of decedent did not cause the stock and cash credited to him to become available to or be distributed to his surviving spouse within the meaning óf section' 165 of the Revenue Act of 1936. finally, petitioner maintains that, since a .portion of the stock which *1262 was credited to decedent’s account was derived from stock dividends, that portion could not be taxed to decedent or to Hope 0- Berry because stock dividends were not taxable prior to the year 1936.
Respondent argues that the amounts credited to decedent’s account in the fund did not become available to him and were not distributed to him prior to 1936. He argues further that petitioner is barred by equitable estoppel from claiming that the amounts credited to decedent’s account were taxable in the years credited rather than in the taxable year.
The question of whether the amounts credited to decedent’s account by the trustees of the fund were taxable in the years credited or in the taxable year must be determined by reference to section 219 (f) of the Revenue Acts of 1921, 1924, and 1926, and section 165 of the Revenue Acts of 1928, 1932, and 1934. Although there were minor changes in the phraseology used in the corresponding sections of those acts, we believe that the differences are of no moment so far as these proceedings are concerned. Section 165 of the Revenue Act of 1928 and section 165 of the Revenue Act of 1934 are set out in the margin below.[1]
The same fund which we are here considering was previously before us in Dillis C. Knapp, 41 B. T. A. 23. In that case we held that a participant in the fund was not taxable on credits to his account in the fund until the amounts were actually distributed to him on severance of his employment with Sears, Roebuck & Co. Our holding was that no part of the credits was constructively received by him or “made available” to him so as to be subject to income tax in any year prior to the year in which he withdrew from the fund. After determining that the doctrine of constructive receipt was not applicable, we stated:
* ⅜ * ijijjg reC01.(j clearly demonstrates tliat his right to continue to participate was a Valuable one, the loss of which would have been a serious loss. It *1263 was unlike the ordinary investment. The company was' annually making and was required to make substantial contributions to the credit of each participant based upon the amount of his deposits. Only by surrendering his right to further share in such contributions could the petitioner withdraw all of his participation from the fund. He had to surrender his entire right in what was obviously to him a very profitable and desirable opportunity as long as'he could possibly remain a participant in it. It is difficult to conceive of a more important limitation or condition upon a right to receive money than the one which attached to the right of this petitioner.
* * * * * * *
Congress, in enacting section 219 (f) and section 165, above cited, relieved the participants in employees’ trusts of income tax until they had actually received their profits in cash or its equivalent. Prior to that time they might not have had any funds with which to pay the tax. Although the tax upon the entire profit at final distribution may be in excess of what the tax would have been if imposed upon the annual accretions, this circumstance is unimportant in view of the clear language of the statute. * * *
Petitioner, however, contends that the instant proceedings differ from the Knapp case in that here decedent exercised control over the credits to his account in the fund so that they, may be said, to have been “made available” to decedent in the years 1931, 1934; or 1935. Thus, although we said in Dillis C. Knapp, supra, that the credits were not “made available” to the participant while the right to withdraw credits from the fund was subject to a condition that upon withdrawal he could never become a participant in the fund again, petitioner here claims that such condition did not obtain under the facts of this case. In other words, petitioner here claims that the credits to decedent’s fund account were available to him prior to the taxable year without a forfeiture of his right to continue participation in the fund. In support of this contention petitioner cites the fact that decedent pledged the credited securities in 1931, 1934, and 1935 as security for loans and continued to participate in the fund.
The pledging of the credited securities as collateral for loans did not operate to distribute or make available to decedent the securities pledged within the meaning of section 165, supra. The pledged securities remained in the fund until decedent’s death. Only by withdrawal of such credits could they have been distributed or made available to decedent in his lifetime. Decedent at no time made or applied for partial withdrawal under section 7 of article V of the articles governing the fund and there is no provision in such articles which would entitle him totally to withdraw the credits of his account without forfeiting his right to future participation, in the fund. This limitation led us to our decision in the Knapp case. • Decedent elected to continue his participation in the fund and not until his death did he cease to so participate. So long as that election stood, he could not withdraw the amount of his credit and hence while such election stood his credits of cash and securities were neither distributed nor available to him.
*1264 Decedent could have exercised, but did not, 'the right of partial withdrawal under section 7 of article Y of- the articles governing the fund without losing his right to further participate in the fund. However, such partial withdrawal would have reduced the quantum of his future participation in the fund and consequently would have required the surrender of such economic or financial advantage as the reduction in participation should entail. Also, such partial withdrawal could have been made only upon his making application therefor. He made no such application. Such right of withdrawal, unless exercised, did not effect a segregation or setting apart from the fund of any part of decedent’s prorated credits therein.. The right was not self-executing to effectuate such result. The credits, in the absence of an application for their withdrawal, remained in the fund as a part thereof under the control and operation of its trustees. The fund was administered as a whole, regardless of the credits therein of individual participants, and the earnings and profits in a current year plus the contributions to the fund in such year, inured to the fund as a whole, but were credited to the participants to designate their respective pro rata interests.therein. The fund remained intact, notwithstanding the wdiole thereof was credited pro rata to participants, until a withdrawal was made by a participant of all or part of the amount of his credits. The trustees had no power to distribute the fund, or any part of it, oh their own initiative. Hence, until a participant exercised his right of withdrawal from the fund, his credit therein represented only a pro rata equitable interest which was not available to him.
We hold that there was no withdrawal of any part of decedent’s credit prior to his death and that prior' to such time no part thereof was distributed or made available to him.
Petitioner’s contention that the fund was in fact a stock purchase plan is unfounded. Reference to the articles governing the operation of the fund will demonstrate that the fund is specifically directed at savings, profit sharing, and pensions and' that the investment in Sears stock was merely to further the accomplishment of this triple purpose.
We see no merit in petitioner’s contention that decedent’s death had no effect in determining the time or the fact of the taxability to the petitioner, Hope C. Berry, of the credits in decedent’s fund account. Under section 2 of article Y of the articles of the fund the death of the decedent ipso facto effected a withdrawal from the fund of the amount of decedent’s credits therein ' and thereupon the securities and cash so credited became available to decedent’s personal representative and his surviving wife, Hope C. Berry. To the extent that the 758 shares of stock and cash credited to decedent at the túne of his death represented income, it was community income of decedent *1265 and Ms surviving wife, realized for tax purposes during the lifetime of decedent, and was taxable one-half to each of the spouses individually in the year of decedent’s death. The fact that the stock and' cash credited to decedent at his death was community property properly includable in the community estate of decedent and Hope C. Berry for administration under the laws of Washington in no way affects the taxability of the income represented thereby as above indicated. ■ .
Petitioner’s contention that decedent’s credits had their source in part, in nontaxable stock dividends and ,to that extent .are not taxable is without merit in view of our holding that the income here taxable is that realized .from decedent’s participation in the fund. The amount of the cash plus the value of the stock made, available to petitioner by the death of decedent, less the total of the amounts contributed by him to the fund, is taxable income under section 165, supra, regardless of its derivation.
In view of our holding as hereinabove indicated, it is 'unnecessary to consider the question of estbppel presented by respondent.

Decision will be entered for the respondent.

 SBC. 165. [Rev. Act 1928.] EMPLOYEES’ TRUSTS.
A trust created by an employer as a part of a stock bonus, pension, or profit-sharing plan for the exclusive benefit of some or all of his employees, to which contributions are made by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, shall not be taxable under section 161, but the amount contributed to such fund by the employer and all earnings of such fund shall be taxed to the distributee in the year in which- distributed or made available to him. Such distributees shall for the purpose of the normal tax be allowed as credits against net income such part of the amount so distributed or made available as represents the items of dividends and interest specified in section 25 (a) and (b).
SEC. 165. [Rev. Act 1934.] EMPLOYEES’ TRUSTS.
A trust created by an employer as a part of a stock bonus, pension, or profit-sharing plan for the exclusive benefit of some or all of his employees, to which contributions are made by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, shall not be taxable under section 161, but the amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him. Such distributees shall for the purpose of the normal tax be allowed as credits against net income such part of the amount so distributed or made available as represents the items of dividends and interest specified in section 25 (a).