PAUL NEWMAN AND HELEN NEWMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 506–75. Filed June 29, 1977.

*Paul Newman,* pro se.
*Theodore M. David,* for the respondent.

### OPINION

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax for calendar years 1971 and 1972 of $1,133.25 and $3,503.18, respectively. The sole issue for decision is whether an amount received by petitioners from an annuity under the New York State Employees' Retirement System equal to the interest earned on petitioners' accumulated contributions to that system may be excluded from petitioners' gross income.

All of the facts have been stipulated and are found accordingly.

Petitioners, husband and wife, filed joint Federal income tax returns for calendar years 1971 and 1972 with the Internal Revenue Service Center, Andover, Mass. At the time

of filing the petition in this case, they resided in Brooklyn, N.Y. Petitioners have always kept their books and records and filed their income tax returns on the cash method of accounting.

Petitioner Paul Newman became an employee of the State of New York in the Department of Taxation and Finance on September 1, 1933. He continued that employment until his retirement on September 9, 1971.

Membership in the New York State Employees' Retirement System (hereinafter referred to as the retirement system) was mandatory for Mr. Newman. However, he had the alternative of becoming a member of the retirement system upon completion of 6 months of service in the classified civil service of the State of New York, or of becoming a member before completion of 6 months of service by filing with the State comptroller a statement consenting and agreeing to membership and to payroll deductions for annuity purposes. Mr. Newman became a member on September 1, 1933, the initial date of his employment, by executing a document containing his application for membership and the required statement. He remained a member until his retirement.

The New York State Employees' Retirement System was established for the payment of retirement allowances and other benefits to members. Since its inception, the comptroller of the State of New York has been the administrative head of the retirement system and the trustee of its several funds: the annuity savings fund, the annuity reserve fund, the pension accumulation fund, and the pension reserve fund. The assets of the retirement system have been invested by the State comptroller, as provided by law, with substantial investments in corporate stocks and bonds, real estate mortgages, Federal, State, and municipal bonds, and other securities.

During the period of petitioner's employment by the State of New York, the retirement system was funded by contributions made by its members and by contributions made by the State of New York, and by political subdivisions of the State, and public and quasi-public organizations with respect to their employees who were members. All amounts contributed by Mr. Newman to the retirement system were deducted and withheld from his salary and were credited annually to his individual annuity savings account in the annuity savings

fund of the retirement system. Interest on the accumulated contributions and on the accumulated interest previously credited was credited to his individual annuity savings account at the rate of 4 percent per year, compounded annually, as required by State statute. All amounts contributed by the State of New York to the retirement system on behalf of Mr. Newman were credited to the pension accumulation fund of the retirement system. All income from investments of the retirement system was credited to the pension accumulation fund.

In the event of Mr. Newman's separation from service for any cause prior to retirement, he was entitled to withdraw, and the retirement system was required to refund to him, his estate, or his designated beneficiary, the accumulated contributions and interest standing to his credit in his individual annuity savings account less the amount of any outstanding balance in his loan account in the annuity savings fund. While a member of the retirement system, Mr. Newman received annual statements showing the condition of his annuity savings account and loan account.

Upon retirement, Mr. Newman elected to receive benefits in accordance with a settlement option that provided an income to him for life and provided an income to his wife for life, if she survived him, equal to one-half of the initial annuity. The retirement allowance consisted of an annuity plus a pension. The annuity was an annual allowance for life, payable in monthly installments, equal to the actuarial equivalent of petitioner's accumulated contributions and interest credited to his individual annuity savings account less the balance in his loan account. This amount was transferred to the annuity reserve fund at the time of Mr. Newman's retirement. The pension was an annual allowance for life, payable in monthly installments, derived from the contributions made by the State of New York to the pension accumulation fund of the retirement system. The amount of the pension was computed on a statutory formula based primarily on Mr. Newman's final average salary and his years of service. It was payable out of the pension reserve fund, to which the State comptroller transferred such amounts as were necessary from the pension accumulation fund.

At the time of petitioner's retirement on September 9, 1971, his individual annuity savings account in the annuity savings fund of the retirement system had been credited with contributions made by him totaling $17,121.37, consisting of deductions from his salary in the amount of $16,525.57 and his employer's contributions made before 1939 of $595.80. His individual annuity savings account had also been credited with interest on the accumulated contributions totaling $18,130.62. Of such amount, $76.81 represented interest earned between September 1, 1933, and July 1, 1940. At the time of Mr. Newman's retirement, the balance in his loan account in the annuity savings fund was $14,945.63. Mr. Newman's accounts in the annuity savings fund as of the date of his retirement are summarized below:

| | | |
|---|---:|---:|
| Contributions credited to petitioner's individual annuity savings account... | | $16,525.57 |
| Interest credited to individual annuity savings account: | | |
| Before July 1, 1940 | $76.81 | |
| After July 1, 1940 | 18,053.81 | 18,130.62 |
| Employer's contributions made before 1939 | | 595.80 |
| Total | | 35,251.99 |
| Less loan account balance.... | | 14,945.63 |
| Amount available for computation of annuity portion of retirement allowance | | 20,306.36 |

Mr. Newman's retirement allowance was computed by the retirement system to be $1,471.57 per month. He received retirement allowances totaling $5,493.86 in calendar year 1971 and $17,658.84 in calendar year 1972. His monthly retirement allowance consisted of an annuity of $135.02 (provided by Mr. Newman's accumulated contributions) and a pension of $1,336.55 (provided by contributions made by the State of New York).

On December 6, 1971, Mr. Newman received a letter from the retirement system informing him of the amount and composition of his retirement allowance and stating in part as follows:

### Income Tax

Your retirement allowance *is exempt* from New York State income tax. It is *not fully exempt* from Federal income tax.

Federal regulations, not the New York State Employees' Retirement System, determine the portion of your retirement allowance which is not taxable.

For Federal income tax purposes your retirement allowance is reportable, but does not become taxable until you have excluded *$2175.74* from gross income. This amount is the sum of your contributions, *without interest,* and any contributions made by your employer before 1939.

After you have excluded the above amount (referred to in Federal regulations as either cost or consideration paid) future allowances are fully taxable. When your allowance becomes taxable, the Retirement System is required to file on or before February 28 an information return (Form 1099) with the Internal Revenue Service of the United States Treasury Department. A copy of this return will be mailed to you and will state the amount includable in gross income for the taxable year.

[Emphasis in original.]

In their 1971 Federal income tax return, petitioners reported a total amount received from the retirement system of $20,439.49, which was the total of Mr. Newman's loan balance of $14,945.63 at retirement and the retirement allowance payments of $5,493.86. However, they excluded that $20,439.49 from their gross income, claiming that their total consideration for the contract was recoverable within 3 years and that it exceeded the amount received. In his notice of deficiency, respondent excluded from gross income only $17,121.37, which was the total of Mr. Newman's contributions of $16,525.57 and his employer's contributions made before 1939 of $595.80. He disallowed the exclusion claimed by petitioners to the extent it represented interest earned on Mr. Newman's contributions. Respondent included in petitioners' gross income the remaining portion of the amount received from the retirement system, $3,318.12.

In their 1972 Federal income tax return, petitioners reported a total amount received from the retirement system of $17,658.84, and excluded $14,812.50 of this amount from gross income. Petitioners computed this exclusion by subtracting the amount they excluded in 1971, $20,439.49, from the amount they claimed was their total consideration for the contract, $35,251.99. This latter figure was the total amount credited to Mr. Newman's individual annuity savings account, including accumulated interest of $18,130.62. In his notice of deficiency, respondent disallowed the entire exclusion claimed by petitioners and increased petitioners' gross income by $14,811.90.

Respondent explained the adjustments described as follows:

During each of the taxable years 1971 and 1972, you received a retirement allowance from the New York State Employees Retirement System (NYSERS) and excluded therefrom the entire amount received in 1971 and a portion thereof in 1972. It is determined that the investment in the contract as reflected on your return was incorrectly computed. Interest credited on the employee contribution is not included as a part of the taxpayer's consideration paid for the contract for purposes of section 72 of the Internal Revenue Code. Therefore, the taxable portion of your pension and annuity income in each of the years 1971 and 1972 is increased in the amounts of $3,318.12 and $14,811.90, respectively. Computation is as follows:

| | | |
|---|---|---|
| Amounts received: | | |
| Loan balance repaid | $14,945.63 | |
| Annuity payments | 5,493.86 | $17,658.24 |
| Total | 20,439.49 | 17,658.24 |
| Less: | | |
| Contributions and employer cost before 1939 | 17,121.37 | 0 |
| Taxable portion | 3,318.12 | 17,658.24 |
| Reported on return | 0 | 2,846.34 |
| Increase in Income | 3,318.12 | 14,811.90 |

The effect of respondent's determination is to include in petitioners' income subject to tax the amounts representing the interest credited to Mr. Newman's account.

Both parties agree that the amounts petitioners received from the retirement system are taxable under the provisions of section 72(a) and (d), I.R.C. 1954.[1] See sec. 402. Section 72(d)

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

SEC. 72. ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS.

(a) GENERAL RULE FOR ANNUITIES.—Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract.

(b) EXCLUSION RATIO.—Gross income does not include that part of any amount received as an annuity under an annuity, endowment, or life insurance contract which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contract (as of such date). This subsection shall not apply to any amount to which subsection (d)(1) (relating to certain employee annuities) applies.

* * *

(d) EMPLOYEES' ANNUITIES.—

(1) EMPLOYEE'S CONTRIBUTIONS RECOVERABLE IN 3 YEARS.—Where—

(A) part of the consideration for an annuity, endowment, or life insurance

provides that the amounts received from certain annuities may be excluded from gross income until an amount equal to the employee's "consideration for the contract" has been excluded. Thus, the precise issue to be decided here is whether the interest credited to Mr. Newman's annuity savings account was part of his "consideration for the contract." Petitioners assert that an amount equal to the interest must be excluded from gross income as part of Mr. Newman's consideration for the annuity either because it was interest on the obligation of a state within the meaning of section 103(a)[2] or because the interest was properly taxable to petitioners when credited and thus must be excluded from income when received just as the amounts of salary withheld and credited to Mr. Newman's account. Petitioners' argument concerning section 103 is discussed first.

Respondent and petitioners have stated on brief that if the interest credited to Mr. Newman's account is interest on an obligation of a State within the meaning of section 103, the interest would be part of his consideration for the contract.[3]

---

contract is contributed by the employer, and

(B) during the 3-year period beginning on the date on which an amount is first received under the contract as an annuity, the aggregate amount receivable by the employee under the terms of the contract is equal to or greater than the consideration for the contract contributed by the employee,

then all amounts received as an annuity under the contract shall be excluded from gross income until there has been so excluded an amount equal to the consideration for the contract contributed by the employee. Thereafter all amounts so received under the contract shall be included in gross income.

(2) SPECIAL RULES FOR APPLICATION OF PARAGRAPH (1).—For purposes of paragraph (1)—

(A) if the employee died before any amount was received as an annuity under the contract, the words "receivable by the employee" shall be read as "receivable by a beneficiary of the employee"; and

(B) any contribution made with respect to the contract while the employee is an employee within the meaning of section 401(c)(1) which is not allowed as a deduction under section 404 shall be treated as consideration for the contract contributed by the employee.

(3) CROSS REFERENCE.—

For certain rules for determining whether amounts contributed by employer are includible in the gross income of the employee, see part I of subchapter D (sec. 401 and following, relating to pension, profit-sharing, and stock bonus plans, etc.).

[2] SEC. 103. INTEREST ON CERTAIN GOVERNMENTAL OBLIGATIONS.

(a) GENERAL RULE.—Gross income does not include interest on—

(1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia; and

(2) qualified scholarship funding bonds.

[3] Respondent initially claimed that this resulted directly from the application of sec. 72(f), which states:

For reasons subsequently discussed, we find that the interest credited was not interest on an obligation of a State or political subdivision within the meaning of section 103. Therefore, it is unnecessary for us to decide whether the parties are correct in their conclusion that the interest credited to Mr. Newman's account would be a part of his consideration for the contract under the provisions of section 72 if that interest were paid on an obligation of a State within the meaning of section 103. Suffice it to say that we do not consider the view of the parties in respect to this issue to be clearly correct under the provisions of section 72.

Although interest is generally included in gross income under section 61(a)(4), section 103(a) provides an exclusion from gross income for interest paid on the obligations of

(f) SPECIAL RULES FOR COMPUTING EMPLOYEES' CONTRIBUTIONS.—In computing, for purposes of subsection (c)(1)(A), the aggregate amount of premiums or other consideration paid for the contract, for purposes of subsection (d)(1), the consideration for the contract contributed by the employee, and for purposes of subsection (e)(1)(B), the aggregate premiums or other consideration paid, amounts contributed by the employer shall be included, but only to the extent that—

(1) such amounts were includible in the gross income of the employee under this subtitle or prior income tax laws; or

(2) if such amounts had been paid directly to the employee at the time they were contributed, they would not have been includible in the gross income of the employee under the law applicable at the time of such contribution.

Paragraph (2) shall not apply to amounts which were contributed by the employer after December 31, 1962, and which would not have been includible in the gross income of the employee by reason of the application of section 911 if such amounts had been paid directly to the employee at the time of contribution. The preceding sentence shall not apply to amounts which were contributed by the employer, as determined under regulations prescribed by the Secretary, to provide pension or annuity credits, to the extent such credits are attributable to services performed before January 1, 1963, and are provided pursuant to pension or annuity plan provisions in existence on March 12, 1962, and on that date applicable to such services.

Petitioners, however, relied on sec. 72(f) only by analogy. They argued that broader principles applied to render the interest part of Mr. Newman's consideration for the contract, particularly sec. 1.72–2(b)(1)(i), Income Tax Regs., which states:

*Amounts.* (1)(i) In general, the amounts to which section 72 applies are any amounts received under the contracts described in paragraph (a)(1) of this section. However, if such amounts are specifically excluded from gross income under other provisions of chapter 1 of the Code, section 72 shall not apply for the purpose of including such amounts in gross income. For example, section 72 does not apply to amounts received under a life insurance contract if such amounts are paid by reason of the death of the insured and are excludable from gross income under section 101(a). See also sections 101(d), relating to proceeds of life insurance paid at a date later than death, and 104(a)(4), relating to compensation for injuries or sickness.

In his reply brief in response to petitioners' argument, respondent agreed that excluded interest would become part of a taxpayer's consideration but did not further explain his grounds for that position.

certain governmental units. However, this exclusion, even though framed in broad language, does not extend to all interest paid by these bodies. It is well established that the exclusion applies only to interest paid on obligations incurred in the exercise of the unit's borrowing power. E.g., *Fox v. United States*, 397 F.2d 119 (8th Cir. 1968); *Holley v. United States*, 124 F.2d 909 (6th Cir. 1942), cert. denied 316 U.S. 685 (1942).

This requirement stems from the purpose of the statute, which was to aid States in borrowing funds. Thus, in *American Viscose Corp. v. Commissioner*, 56 F.2d 1033 (3d Cir. 1932), affg. 19 B.T.A. 937 (1930), cert. denied 287 U.S. 615 (1932), it was stated:

> The exemptions of Congress were evidently meant to aid in the flotation of government bonds and securities by making them tax free and, therefore, more attractive to investors. We see no reason why the construction of the statute should be so broadened as to cover a transaction which had no relation to the flotation of securities, but was one where the government had wrongfully collected money, and, in righting the wrong, had, pro tanto, compensated therefor by paying interest. * * *

See also *Holley v. United States, supra.* Also, in *Fox v. United States, supra,* the court noted at page 122:

> the exclusion as provided under [sec. 103] reflects a fundamental long-standing policy of Congress that the federal government shall not impose any restraint on the borrowing power of the states or their political subdivisions for public use and benefit. The legislative history clearly indicates that the purpose of the exclusion is to permit state and local governments to obtain capital at a low rate of interest. Intrinsic to the statutory exclusion of interest on governmental obligations is the requirement that the obligation be incurred in the exercise of the state's (or political subdivision) borrowing power.
>
> It has been consistently held that the exemption provided by Section 103(a) is applicable to such obligations incurred in the exercise of the borrowing power of the State. However, the word "obligations" is not intended to extend to every obligation which may include interest but only to those obligations which were created in the exercise of the state's borrowing power.

Petitioners argue that the interest credited to Mr. Newman's annuity savings account in the retirement system was interest on an obligation of the State of New York incurred in an exercise of that State's borrowing power. They point out that the retirement system is an instrumentality of the State

of New York,[4] that under it Mr. Newman's account was credited with amounts deducted from his salary and with 4-percent interest, and that Mr. Newman or his beneficiary was entitled to receive benefits in the form of an annuity based on his account and a pension in an amount set by statute. Petitioners argue that payments of interest and benefits were made "obligations of the State of New York" by a provision of 1924 N.Y. Laws, ch. 618, which was formerly section 59 of the New York Civil Service Law.[5] While the corresponding provision under the law in effect at Mr. Newman's retirement, N.Y. Retirement & Soc. Sec. Law sec. 18 (McKinney 1971),[6] employs somewhat different language, it apparently

---

[4] See *Glassman v. Glassman*, 309 N.Y. 436, 131 N.E.2d 721 (1956). In that case, the New York Court of Appeals described the system in the following language at p. 724:

"Little argument is required to demonstrate that the Retirement System is the kind of state instrumentality that is clothed with the sovereign immunity of the state. It is engaged in an important governmental function, and providing retirement pensions, annuities and other employment benefits for its personnel, comparable to those received by employees of private industry, certainly assists and promotes the efficient operation of the affairs of the state itself. The close relationship between the Retirement System and the state government is apparent throughout the Civil Service Law * * * provisions which create and govern the affairs of the System. Thus, the State Comptroller is made its administrative head and trustee of its several funds, * * * the Attorney-General, its legal advisor, * * * and custody of its funds is placed in the charge of the Department of Taxation and Finance. * * * The state, as an employer of members of the Retirement System, is obligated for the maintenance of various reserves and funds of the System, as well as for its expenses and the payment of all employee benefits. * * *"

[5] Sec. 59 of the New York Civil Service Law provided:

Guaranty.—Regular interest charges payable, the creation and maintenance of reserves in the pension accumulation fund and the maintenance of annuity reserves and pension reserves as provided for and the payment of all pensions, annuities, retirement allowances, refunds and any other benefits granted under the provisions of this article, are hereby made obligations of the state of New York and the political subdivisions thereof participating in the retirement systems. All income, interest and dividends derived from deposits and investment authorized by this article shall be used for the payment of the said obligations of the state of New York and the political subdivisions thereof participating in the retirement system. Any amount derived therefrom which exceeds the amount required to provide the interest as required on the various funds of the system may be used by the comptroller for administration expenses as provided in section seventy-eight of this chapter to reduce the regular appropriation otherwise required to meet such obligations.

[6] Sec. 18. Guaranty

a. The latest employers of the different members shall be obligated for:

1. Regular interest charges payable, and special interest, if any, and

2. The creation and maintenance of reserves in the pension accumulation fund, and

3. The maintenance of annuity reserves and pension reserves, and

4. The payment of all pensions, annuities, retirement allowances, refunds and any other benefits, and

creates the same rights and liabilities as the former statute. Petitioners further assert that these rights and liabilities were made contractual in nature by N.Y. Const. art. V, sec. 7.[7] See *Birnbaum v. New York State Teachers Retirement System,* 5 N.Y.2d 1, 152 N.E.2d 241, 176 N.Y.S.2d 984 (1958).

Respondent does not dispute that the State of New York incurred the obligations described by petitioners. However, he argues that these obligations were incurred, not in exercise of the borrowing power of the State, but for other purposes and therefore interest on the amounts of the obligations is not entitled to exclusion under section 103.

In *Fox v. United States,* 397 F.2d 119 (8th Cir. 1968), a depositor sought to exclude under section 103 interest paid on certificates of deposit issued by the Bank of North Dakota, an agency of the State of North Dakota. The court there based its decision disallowing the exclusion principally on its finding that the money received for the certificates of deposit was not "borrowed" by the bank. "They represent only a deposit liability upon which a stated rate of interest is paid to the depositor." (397 F.2d at 122). Thus, there was no exercise of borrowing power. The court found persuasive the rationale of *Holley v. United States, supra,* where it was stated (p. 911):

Congress established the exemptions in this section of the statute to aid in the flotation of government bonds and securities by making them tax free, and therefore more attractive to investors. Hence the court concluded that the statute should not be so broadly construed as to cover a transaction which had no relation to the flotation of securities. This holding was expressly approved in Helvering v. Stockholms Enskilda Bank, supra, which declared that the predecessor of this section, identical, so far as this question is concerned, with the statute now considered, had been written to make attractive investment in the obligations of the United States, and

---

5. The expenses of the retirement system, as provided for or granted under the provisions of this article. In the case of employer contributions required to be made for prior service allowed pursuant to paragraph three of subdivision b of section forty-one of this article, the provisions of such paragraph three shall govern.

b. Except as otherwise provided pursuant to this article, all income, interest and dividends derived from deposits and investments authorized by this article shall be used for the payment of such obligations.

7 This provision states:

"After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired."

therefore should be interpreted narrowly so as to exempt nothing more than Congress clearly intended to be exempt.

Factors mentioned as distinguishing a deposit liability were an absence of intent to make a "general" loan and limitations upon the manner and extent of the use of the funds by the bank. The deposits in the bank were not "public funds" and could not be used in governmental operations. The court noted that bank deposits historically had not been considered borrowed funds.

In the instant case, the State of New York, through the retirement system, received Mr. Newman's contributions principally to hold for Mr. Newman's own benefit. The amounts so received were credited to his account, and the balance of this account was available at all times for distribution to him or his beneficiary in the event of his death, disability, or termination of employment. See N.Y. Retirement & Soc. Sec. Law sec. 51 (McKinney 1971). While the level of the pension portion of the retirement benefits was set without regard to his contributions, the annuity portion was directly related to the amount in the account. Furthermore, the funds contributed were invested to produce income sufficient to pay the interest required to be credited to the account.

Mr. Newman's contributions were not borrowed from him by the State of New York within the meaning of section 103. The trust funds were not available for use in governmental operations. Use of the funds was limited to investment and payment of the expenses of the system. The scope of investment was strictly circumscribed by statute. See *Sgaglione v. Levitt,* 37 N.Y.2d 507, 337 N.E.2d 592, 375 N.Y.S.2d 79 (1975). Although some funds were invested in bonds and notes of the State and its instrumentalities, no more than a small portion was so invested. There is no evidence that investment in such bonds and notes was a significant purpose for requiring contributions of retirement system members. Also, the evidence does not show that production of income in excess of the interest required to be credited to the annuity savings accounts was more than an incidental aspect of the retirement system. Although the taxing power of the State was pledged to payment of the retirement benefits, this was only a contingent source of

payment secondary to the trust fund itself. The contributions required from both employer and employee were maintained at a level to ensure adequacy of those funds.

Petitioners have contended that the characteristics of the State obligations in the instant case are analogous to those of the Federal Government under the Postal Savings System.[8] Under administrative interpretations, interest paid on deposits under the Postal Savings System made before March 1, 1941, was excluded from gross income under the predecessors of section 103. See sec. 1.103–4(a)(3), Income Tax Regs.; I.T. 3562, 1942–2 C.B. 76. While the obligations under the Postal Savings System are similar in some ways to those under the New York State Employees' Retirement System, at least one essential distinction exists between them. The judicial interpretations and legislative history of the Postal Savings System clearly show that one primary purpose of the System was the establishment of a fund to be "held in reserve for emergency use of the government and to facilitate government refinancing operations by the purchase of government bonds." *Farley v. Albers*, 112 F.2d 401, 402 (D.C. Cir. 1940), cert. denied 311 U.S. 653 (1940); see, e.g., 45 Cong. Rec. 2709–2711, 7699–7705, 7713 (1910). Exercise of the borrowing power of the United States was said to provide a constitutional basis for the legislation. 45 Cong. Rec. 7700 (1910). In this aspect, essential for exclusion under section 103, the obligations under the Postal Savings System differed from those before us. As discussed above, no exercise of borrowing power was made in connection with the obligations incurred here. Although some funds were incidentally invested in State bonds, use of the funds by the State of New York was not a significant purpose of the retirement system.

Petitioners argue that several cases, typified by *Kings County Development Co. v. Commissioner*, 93 F.2d 33 (9th Cir. 1937), cert. denied 304 U.S. 559 (1938), and *Commissioner v. Meyer*, 104 F.2d 155 (2d Cir. 1939), support their position that the obligations of the State of New York were incurred in the exercise of its borrowing power. As petitioners recognize, however, the issue decided in those cases was whether the

---

[8] The provisions of the Postal Savings System are found at 39 U.S.C. secs. 5201–5229 (1964). The System was discontinued in 1966. 39 U.S.C. sec. 5225.

obligation of a State under section 103 need take any particular form. They hold that it does not.[9] Each case apparently assumed that the borrowing power was exercised and therefore concerned itself with other less fundamental issues. Examined in context, these cases add little to the present inquiry.

Petitioners have also argued that a failure of the statute to exclude from gross income interest on the obligations here in issue, while excluding interest on other obligations, would violate the Fifth Amendment of the United States Constitution because this would "[discriminate] between forms of obligation in such an unreasonable manner, [produce] such gross and patent inequality, and [be] arbitrary and unfair." We do not agree that any arbitrary classification, violative of the Fifth Amendment, has been made here. We have previously discussed the fact that the distinction between obligations incurred in an exercise of borrowing power and other obligations stems from the purpose of section 103 to facilitate flotation of Government bonds and securities. Numerous courts have relied on this purpose in limiting the statute as we have. We can see nothing arbitrary or irrational in either the purpose or the distinction. We find that petitioners have failed to overcome the presumption of validity attaching to the statute as so construed. See *Estate of Klein v. Commissioner*, 63 T.C. 585, 593–595 (1975), affd. 537 F.2d 701 (2d Cir. 1976), cert. denied 429 U.S. 980 (1976).

Petitioners' alternative position is that the interest credited to Mr. Newman's annuity savings account is part of his consideration for the contract under section 72(d) because it was taxable to him when credited. They draw an analogy to Mr. Newman's contributions from his salary, which were taxable to him even though withheld by the employer and which formed part of his contribution for the contract. We reject this argument. The principles governing taxation of amounts withheld from petitioner's salary as contributions and those governing taxation of interest credited upon those contributions are quite different. See *Taylor v. Commissioner*, 2 T.C. 267, 270 (1943), affd. sub nom. *Miller v. Commissioner*,

---

[9] There must be a written instrument evidencing the obligation, however. *Newlin Machinery Corp. v. Commissioner*, 28 T.C. 837 (1957).

144 F.2d 287 (4th Cir. 1944). Thus, the cases cited by petitioners, such as *Cohen v. Commissioner*, 63 T.C. 267 (1974), affd. per curiam 543 F.2d 725 (9th Cir. 1976), are inappropriate.

Under both present and former provisions of the Federal tax laws, amounts distributed or made available from an employee's trust, except for certain contributions to nonexempt trusts made by the employer, are taxable to the distributee only in the year actually distributed or made available to him. See sec. 402, I.R.C. 1954; sec. 165, I.R.C. 1939; sec. 165, Revenue Act of 1938, ch. 289, 52 Stat. 447; sec. 165, Revenue Act of 1936, ch. 690, 49 Stat. 1648; sec. 165, Revenue Act of 1934, ch. 277, 48 Stat. 680; sec. 165, Revenue Act of 1932, ch. 209, 47 Stat. 169. The interest credited to Mr. Newman's annuity savings account was certainly not distributed to him prior to 1971, nor was it made available to him as that term has been construed.

In *Estate of Berry v. Commissioner*, 44 B.T.A. 1254 (1941), an employee held a vested interest in an employees' trust containing both employer's and employees' contributions and trust earnings. During certain years prior to those there in issue the employee had the power to withdraw the amounts credited to his account. The Board of Tax Appeals nevertheless held that the amounts credited to his account in excess of his own contributions were not made available to him in those years within the meaning of section 165 of the Revenue Acts then in effect. The employee's right to withdraw was subject to the condition that the employee could not again participate in the fund. This was found to be a sufficient penalty to prevent taxation under section 165. See also *Knapp v. Commissioner*, 41 B.T.A. 23 (1940).

In the instant case, Mr. Newman had a right to receive the funds credited to his annuity savings account only by withdrawing them pursuant to section 51, N.Y. Retirement & Soc. Sec. Law (McKinney 1971), and its predecessors. Withdrawal under those provisions was allowed only on termination of his employment with his employer for a period of at least 15 days. On withdrawal, Mr. Newman would have ceased to be a member of the retirement system. See, e.g., N.Y. Retirement & Soc. Sec. Law sec. 40(f)(4) (McKinney 1971). Although petitioner could rejoin the retirement system

on reemployment under certain conditions, he would have forfeited valuable benefits in the interim, such as death and disability benefits. See, e.g., N.Y. Retirement & Soc. Sec. Law secs. 60–63 (McKinney 1971).

We find that the funds in the instant case were not made available to Mr. Newman at any time prior to his retirement because of the conditions placed on withdrawal. Certainly the conditions that one quit his job and forego death and disability benefits are equally as onerous as those in the *Berry* and *Knapp* cases, *supra*. Thus, the amounts credited to Mr. Newman's account as interest were not taxable to him in any year prior to his retirement, and petitioners' argument must fail.

*Decision will be entered for the respondent.*