T.C. Summary Opinion 2006-42


UNITED STATES TAX COURT


JAMES CURTIS BARRETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7444-04S.                Filed March 22, 2006.

James Curtis Barrett, pro se.

<u>Catherine G. Chang</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of sections 6330(d) and 7463 of the Internal Revenue Code in effect when the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect at relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

This proceeding arises from a petition for judicial review filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) sent to petitioner on April 8, 2004. Pursuant to sections 6320(c) and 6330(d), petitioner seeks review of respondent's determination sustaining the filing of a notice of Federal tax lien against petitioner. The issue for decision is whether petitioner may dispute the underlying tax liability for any of the years in issue and, if so, whether any adjustment is appropriate.

## Background

Some of the facts have been stipulated, and they are so found, except as described below. The record consists of the stipulation of facts with attached exhibits, additional exhibits admitted during trial, and the testimony of petitioner and Alyce Wong, who is benefits supervisor for the San Francisco City and County Employees Retirement System. At the time of filing the petition, petitioner resided in San Francisco, California.

Respondent made assessments against petitioner for income taxes and related penalties and interest for the taxable years 1994, 1995, 1996, 1997, and 1998. Respondent also assessed for collection costs for the taxable year 1994.

1994 and 1995

Petitioner worked for the City and County of San Francisco (the city and county) for more than 30 years.  During the taxable years 1994 and 1995, petitioner was an operator of light rail vehicles.  Although petitioner earned wage income during both years, he failed to file his 1994 and 1995 Federal income tax returns.[1]

On December 11, 1997, respondent issued a notice of deficiency to petitioner for the taxable year 1995.  Petitioner received the notice of deficiency but did not file a petition with the Court.  A notice of deficiency for the taxable year 1994 was not made part of the record.

1996, 1997, and 1998

Petitioner was a member of a pension plan administered by the city and county (the plan).  Before retiring, petitioner made after-tax contributions to the plan totaling $71,244.41.  The city and county also contributed to the plan on petitioner's behalf.

Petitioner retired from the city and county in December 1995 at the age of 56.  He began receiving distributions from the plan on February 1, 1996.  Petitioner received gross distributions of $31,996.57, $34,714.88, and $35,756.37 for the taxable years

---

[1]  Respondent asserts he prepared a substitute for return for petitioner for each taxable year, see sec. 6020(b), but neither substitute for return was made part of the record.

1996, 1997, and 1998, respectively. Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing, IRAs, Insurance Contracts, etc., issued to petitioner reflect the taxable portions of those gross distributions as $28,893.99, $31,426.69, and $32,468.25, respectively.

On or about June 15, 1999, petitioner filed his Federal income tax returns for the taxable years 1996, 1997, and 1998.[2] There is no indication that petitioner received an extension to file for any of those years. Petitioner reported the distributions he received from the plan and the resulting tax liability on his tax returns, but made no tax payments.

Respondent sent petitioner a letter titled "Proposed Individual Income Tax Assessment" on September 15, 1998. This letter states that petitioner failed to file a return for the taxable year 1996 and includes respondent's calculation of his income tax liability. Respondent also claims he issued a notice of deficiency to petitioner for the taxable year 1996 on May 13, 1999.[3] Petitioner denies receiving any such notice.

---

[2] Petitioner initially failed to sign all three tax returns but later ratified them by means of a declaration signed on July 22, 1999.

[3] The Sept. 15, 1998, letter and the notice of deficiency appear to contradict other documents in the record. For example, respondent assessed $2,299 for the taxable year 1996; however, the Sept. 15, 1998, letter and the notice of deficiency each shows a tax liability of $6,654, excluding additions to tax. Furthermore, while the Sept. 15, 1998, letter shows prepayment
(continued...)

On October 6, 2003, respondent sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (the notice of lien) for the taxable years 1994, 1995, 1996, 1997, and 1998.  Petitioner timely submitted to respondent a Form 12153, Request for a Collection Due Process Hearing.  Petitioner stated in this request that he did not owe the amounts listed in the notice of lien.  He did not raise a spousal defense or offer collection alternatives.

Respondent's Appeals officer and petitioner had a face-to-face hearing on March 8, 2004, and also exchanged subsequent correspondence.  A narrative of what took place at the administrative hearing was not made part of the record.  On April 8, 2004, respondent issued to petitioner a notice of determination, which stated that the Appeals Office had determined that the notice of lien filing was appropriate.   On May 3, 2004, petitioner filed with the Court a petition for lien or levy action seeking review of respondent's notice of determination.

---

[3](...continued)
credits totaling $1,860, that amount is not reflected on petitioner's tax return, the Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing, IRAs, Insurance Contracts, etc., or respondent's Form 4340, Certificate of Assessments, Payments, and Other Specified Matters.  These discrepancies have not been explained.  However, the notice of lien reflects the lower amount and appears consistent with the Form 4340.  Accordingly, we do not need to consider this matter any further.

## Discussion

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a person when a demand for the payment of the person's liability for taxes has been made and the person fails to pay those taxes. Such a lien arises when an assessment is made. Sec. 6322. Section 6323(a) requires the Secretary to file notice of Federal tax lien if such lien is to be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor. Lindsay v. Commissioner, T.C. Memo. 2001-285, affd. 56 Fed. Appx. 800 (9th Cir. 2003).

Section 6320 provides that a taxpayer shall be notified in writing by the Secretary of the filing of a Federal tax lien and provided with an opportunity for an administrative hearing. Sec. 6320(b). An administrative hearing under section 6320 is conducted in accordance with the procedural requirements of section 6330. Sec. 6320(c). At the administrative hearing, a taxpayer is entitled to raise any relevant issue relating to the unpaid tax, including a spousal defense or collection alternatives such as an offer-in-compromise or an installment agreement. Sec. 6330(b) and (c)(2); sec. 301.6320-1(e)(1), Proced. & Admin. Regs.

A taxpayer also may challenge the existence or amount of the underlying tax liability, including a liability reported on

the taxpayer's original return, if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B); see also Montgomery v. Commissioner, 122 T.C. 1, 9-10 (2004); Urbano v. Commissioner, 122 T.C. 384, 389-390 (2004). Section 6330(d) provides for judicial review of the administrative determination in the Tax Court or a Federal District Court, as may be appropriate. Where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Here, petitioner seeks to challenge only his underlying tax liabilities. Respondent concedes that petitioner can dispute the underlying tax liabilities for the taxable years 1994, 1997, and 1998. With respect to the taxable years 1995 and 1996, however, respondent argues that petitioner received a notice of deficiency for each year and, therefore, is precluded from disputing the underlying tax liabilities.

Petitioner concedes receiving the notice of deficiency for the taxable year 1995. He therefore cannot challenge his

underlying tax liability for that year, and respondent's determination is sustained.  Sec. 6330(c)(2)(B).

Regarding the taxable year 1996, the stipulation of facts states that the notice of deficiency was "mailed by respondent on May 13, 1999, and received by petitioner."  At trial, however, petitioner testified that he had not received the notice of deficiency for 1996.  Respondent's counsel appeared to acknowledge petitioner's position, stating that "it is respondent's understanding as well that petitioner disputes his actual receipt of that notice."

"Generally, a stipulation of fact is controlling on the parties, and the Court is bound to enforce it."  Stamos v. Commissioner, 87 T.C. 1451, 1454-1455 (1986).  "We do not lightly disregard facts to which the parties have stipulated; however, where such facts are clearly contrary to facts disclosed by the record, we refuse to be bound by the stipulation."  Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976); see also Rule 91(e).  Because respondent did not object to petitioner's testimony and did not seek to enforce the stipulation, we do not bind petitioner to the stipulation to the extent it states that the notice of deficiency was received by petitioner.

The question remains whether petitioner did in fact receive the notice of deficiency.  We note that the taxable years 1996, 1997, and 1998 involve the same issue.  Based on our discussion

of and resolution of that issue <u>infra</u>, the result in this case will not change if the Court considers the underlying tax liability for the taxable year 1996. We therefore assume, without deciding, that petitioner did not receive the notice of deficiency and we review de novo his underlying tax liabilities for the taxable years 1994, 1996, 1997, and 1998.

<u>1994</u>

Petitioner concedes receiving taxable wage income in 1994 and does not dispute the tax liability resulting from the wage income. Petitioner's sole contention is that respondent failed to properly credit him for withholding of Federal income taxes.

Petitioner introduced an earnings statement for 1994 showing $8,747.27 of withholding. This amount is reflected on respondent's Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, and is not in dispute. The earnings statement also shows that respondent levied petitioner's wages in the amount of $14,274.50, which is not reflected on the Form 4340. Petitioner believes he should be credited with that amount and, in support of his claim, introduced a letter from respondent's Appeals officer dated March 10, 2004.

Although the Appeals officer's letter acknowledges the levy, it explains that the levied funds were applied to petitioner's outstanding liabilities for the taxable year 1983. Petitioner offered no evidence to rebut the explanation contained in the

letter, and there is no indication that the levy was improper. In any case, the Court lacks subject-matter jurisdiction to review the levy of petitioner's wages in 1994 because the collection action began prior to January 19, 1999, which was the effective date of sections 6320 and 6330. See Meehan v. Commissioner, 122 T.C. 396, 399 (2004) ("if a collection action is initiated before January 19, 1999, section 6330 is inapplicable and this Court has no jurisdiction to review the propriety of the collection action"); Bullock v. Commissioner, T.C. Memo. 2003-5.

In sum, there is no indication that respondent incorrectly determined petitioner's tax liability for 1994 or that petitioner made additional payments that are not reflected in the Form 4340. Respondent's determination on this issue is sustained.

1996, 1997, and 1998

Section 61(a) provides that, except as otherwise provided, gross income includes all income from whatever source derived. Section 402(a) provides that the amounts distributed under a plan described in section 401(a), such as a qualified defined benefit plan, shall be taxable to the distributee under section 72.

A defined benefit plan is any plan that is not a defined contribution plan. Sec. 414(j). "The retirement benefit provided by a defined benefit plan is fixed, typically by reference to a formula based on salary and years of service."

<u>Emmons v. Commissioner</u>, T.C. Memo. 1996-265.  Furthermore, "the employer bears the risk of loss because the employer is contractually obligated to pay the retirement benefit specified in the plan."  <u>Id.</u>

At one point during his testimony, petitioner referred to the plan as a defined contribution pension plan.  This may have been inadvertent.[4]  In any case, petitioner's testimony was contradicted by that of Alyce Wong, benefits supervisor for the San Francisco City and County Employees Retirement System (the retirement system).

Ms. Wong testified that the plan to which petitioner belongs is a defined benefit plan.  She explained that petitioner's monthly retirement benefits were calculated based on his age at retirement, years of service, and highest average rate of compensation.  She also explained that petitioner's contributions to the plan do not affect the amount of retirement benefits he receives.  Thus, even if petitioner's contributions to his retirement fund were exhausted, his retirement benefits would continue unchanged.  Accordingly, we conclude that the plan is a qualified defined benefit plan under section 401(a).

In general, section 72(a) requires amounts received as an

---

[4]  A publication produced by the retirement system describes the plan as a defined benefit plan.  This publication is included as an exhibit to the stipulation of facts, and petitioner made frequent reference to it during trial.

annuity to be included in gross income.  Section 72(b)(1)

excludes from gross income "that part of any amount received as

an annuity * * * which bears the same ratio to such amount as the

investment in the contract (as of the annuity starting date)

bears to the expected return under the contract (as of such

date)."  As mentioned above, petitioner's investment in the

contract was $71,244.41.[5]  His annuity starting date was February

1, 1996, the date on which he received his first payment from the

plan.  See sec. 72(c)(4).

Under section 72(c)(3), employers can determine the expected

return under the contract by reference to actuarial tables.

Alternatively, they can use a simplified "safe-harbor" method,

under which "Investment/Number of Monthly Payments = Tax free

portion of monthly annuity".  See Notice 88-118, 1988-2 C.B. 450,

451.[6]  For distributees aged 56 to 60 on the annuity starting

date, the total number of monthly payments is 260.  Id.

Ms. Wong testified that the city and county followed

precisely the method set forth in Notice 88-118, supra to

---

[5] Petitioner testified that he contributed $137,293.29 to the plan.  The plan's records show, however, that petitioner contributed only $71,244.41.  The remaining $66,048.88 of his retirement account balance represented accumulated interest, which is not part of his investment in the contract.  See sec. 72(c)(1); Newman v. Commissioner, 68 T.C. 433 (1977).

[6] Notice 88-118, 1988-2 C.B. 450, was replaced by Notice 98-2, 1998-1 C.B. 266, which applies to annuities with an annuity starting date after Nov. 18, 1996.  Because petitioner's annuity starting date was Feb. 1, 1996, Notice 88-118, supra controls.

calculate petitioner's taxable retirement benefits and generate
the appropriate Forms 1099-R.  Her testimony was corroborated by
the retirement plan's records, which also reflect accurate use of
the safe-harbor method and which correspond to the taxable
distributions reported on the Forms 1099-R.  Respondent's
determination with respect to this issue is sustained.

Additions to Tax Under Section 6651(a)(1) for 1994, 1996, 1997,
and 1998

If a Federal income tax return is not timely filed, an
addition to tax will be assessed "unless it is shown that such
failure is due to reasonable cause and not due to willful
neglect".  Sec. 6651(a)(1).  The Commissioner has the burden of
production with respect to the liability of any individual for an
addition to tax under section 6651(a)(1).  Sec. 7491(c).  The
burden of showing reasonable cause under section 6651(a) remains
on petitioner.  Higbee v. Commissioner, 116 T.C. 438, 446-448
(2001).

Respondent has met his burden of production.  Petitioner
failed to file a tax return for 1994 and filed late tax returns
for 1996, 1997, and 1998.  Petitioner introduced no evidence
establishing reasonable cause.  Respondent's determination on
this issue is sustained.

Additions to Tax Under Section 6651(a)(2) for 1996, 1997, and
1998

Section 6651(a)(2) imposes an addition to tax for failure to

pay the tax reported on a return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". The Commissioner has the burden of production with respect to the liability, and petitioner bears the burden of showing reasonable cause. Higbee v. Commissioner, supra.

Respondent has met his burden of production because petitioner did not pay the tax he reported on his 1996, 1997, and 1998 tax returns. Petitioner introduced no evidence establishing reasonable cause. Respondent's determination on this issue is sustained.

Additions to Tax Under Section 6654(a) for 1994, 1996, and 1997

Section 6654(a) provides for an addition to tax "in the case of any underpayment of estimated tax by an individual". This addition to tax is mandatory unless one of the statutorily provided exceptions applies. See sec. 6654(e); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). There is no exception for reasonable cause or lack of willful neglect. Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960).

Respondent bears the burden of production with respect to the addition to tax under section 6654(a). David v. Commissioner, T.C. Memo. 2005-160. The burden remains upon petitioner to establish the applicability of any exceptions. Higbee v. Commissioner, supra; Spurlock v. Commissioner, T.C. Memo. 2003-248.

Respondent has met his burden of production because petitioner failed to remit, in whole or in part, estimated tax payments for 1994, 1996, and 1997. Petitioner has not shown that any of the statutory exceptions are applicable. Respondent's determination as to the addition to tax under section 6654(a) is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>
<u>for respondent</u>.