T.C. Memo. 2006-158

UNITED STATES TAX COURT

SHERIF S. ABDELHAK a.k.a. SAMUEL A. ABEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 865-05.                    Filed August 1, 2006.

Sherif S. Abdelhak, pro se.

<u>Mark D. Eblen</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  Respondent determined income tax deficiencies
against petitioner for 1998, 1999, and 2000 in the amounts of
$172,626, $31,059, and $222,655, respectively.  Respondent also
determined additions to tax under section 6651(a)(1) for 1998,
1999, and 2000 in the amounts of $30,602.25, $7,810.50, and

$55,663.75, respectively.[1]  Further, respondent determined accuracy-related penalties against petitioner under section 6662(a) in the amounts of $34,525.20 and $6,211.80 for 1998 and 1999, respectively.

The issues for decision are:

(1)  Whether petitioner is entitled to a $435,000 charitable contribution deduction for tax year 1998.  We hold that he is instead entitled to a charitable deduction of $12,713.28.

(2)  whether petitioner is entitled to a theft loss deduction of $2,221,668 for tax year 2000.  We hold that he is not.

(3)  whether petitioner, through Global Trading Group (GTG), an S corporation of which petitioner is the sole shareholder, is entitled to travel, meal and entertainment business expense deductions for tax year 1999 for an amount greater than the $437 allowed by respondent.  We hold that he is not.

(4)  whether petitioner, through GTG, may deduct travel and meal expense deductions of $53,245 for the tax year 2000.  We hold he may not.

(5)  whether petitioner, through GTG, is entitled to more than $2,850 in rent deductions for tax year 1999.  We hold that he is not.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

(6) whether petitioner is liable for additions to tax under section 6651(a)(1) for tax years 1998, 1999, and 2000.  We hold that he is.

(7) whether petitioner is liable for accuracy-related penalties under section 6662(a) for disallowed deductions.  We hold that he is not liable for those penalties in 1998 and 1999.

## Background

Petitioner was a resident of Prospect, Kentucky, at the time he filed his petition.  Petitioner was the former president and chief executive officer (CEO) of the Allegheny Health Education & Research Foundation (AHERF), a Pennsylvania corporation.  AHERF terminated petitioner in June 1998 and filed chapter 11 bankruptcy proceedings 1 month later in July of that year.

A.  1998 Charitable Deduction

In 1990, petitioner sold his home to a subsidiary of AHERF, Jellico, Inc. (Jellico).  In 1992, petitioner signed a land installment contract with Jellico to repurchase the home for $1,280,000 with payment spread over 20 years.  The terms of this contract required petitioner to pay 5 percent of the principal ($64,000) each April 30th and interest payments of 7.5 percent on the remaining principal each October 30th.  The contract also required petitioner to pay all taxes due on the residence. Jellico retained title during the contract period and would transfer title when petitioner paid the full contract price.  If

petitioner defaulted, he could file suit to recover any principal payments made in excess of 25 percent of the purchase price, less any damages to Jellico. Thus, his recovery in the event of his default was limited to the excess of his payments over $320,000 ($1,280,000 x .25 = $320,000). The contract assured Jellico an unencumbered title during such a suit.

In October 1998, petitioner could not make the next interest payment of slightly over $50,000. Petitioner was also in default with respect to the property taxes on the residence. By this time, petitioner had made $384,000 in principal payments. Petitioner contacted Jellico and offered to donate his equity in the residence to AHERF and vacate the premises. Jellico accepted the proposal, and petitioner vacated the residence.

B. 2000 Theft Loss Deduction

On his 2000 return, petitioner claimed a theft loss deduction in the amount of $2,221,668. This loss related to three pieces of property, two life insurance policies with cash surrender values of $1,101,000 and $570,768 and a KEYSOP deferred compensation account which petitioner valued at $550,000.

At the time AHERF terminated petitioner, the premiums of several life insurance policies, including the two claimed as theft losses, were paid by AHERF. In return for payment of the premiums, AHERF maintained a right of corporate recovery on these policies. This right allowed AHERF to recover the funds paid for

the insurance premiums in the event of the policyholder's death or termination. Petitioner assigned his rights under these policies to AHERF in return for its funding of his Key Employees Shared Option Plan (KEYSOP) account, a pension/deferred compensation account. The KEYSOP account itself was recoverable by AHERF in the event AHERF became insolvent or filed for bankruptcy.

At the time of his termination by AHERF, petitioner's KEYSOP deferred compensation account carried a balance of $2,062,425. Also at the time of his termination, petitioner had a loan from PNC Bank, which was cosigned by AHERF, for approximately $2.2 million. After petitioner was terminated, PNC Bank called the loan due. AHERF issued a check, payable to PNC Bank and petitioner jointly, for $1,506,170.97 using funds from petitioner's KEYSOP account to repay the loan. One month after petitioner's termination, AHERF filed for bankruptcy and reclaimed the remaining funds in petitioner's KEYSOP account.

C. Business Deductions

Petitioner is the sole shareholder of GTG, an S corporation. GTG's business involves buying and selling raw materials worldwide. Petitioner's Forms 1040, U.S. Individual Income Tax Return, for 1999 and 2000 claimed $78,563 and $53,245, respectively, in business expense deductions for meals, travel, and entertainment related to GTG. Petitioner submitted records

that demonstrated that the expenses were incurred but not that the expenses had a business purpose.  Petitioner's return also showed a rent expense deduction for 1999 related to GTG; however petitioner presented no evidence related to this expense.

D.  Penalties

The parties stipulated that petitioner was delinquent in filing his tax returns for 1998, 1999, and 2000.  Petitioner filed his 1998 tax return on June 21, 2000; his 1999 tax return on February 28, 2001; and his 2000 tax return no earlier than April 14, 2002.

## Discussion

I.  Burden of Proof and Production

Deductions are a matter of legislative grace; taxpayers do not have an inherent right to claim them.  Taxpayers generally bear the burden of proving that they are entitled to claimed deductions.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  The taxpayer is required to maintain records that are sufficient to enable the Commissioner to determine his or her correct tax liability.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

The Commissioner's determinations set forth in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that the determinations are in error.  Rule

142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual issues may shift to the Commissioner where the taxpayer complies with substantiation requirements, maintains records, and cooperates fully with reasonable requests for witnesses, documents, and other information. Petitioner has not met the requirements of section 7491(a) because he has not met the substantiation requirements regarding the deductions at issue.

The Commissioner carries the burden of production under section 7491(c) with respect to an individual's liability for additions to tax. Once this burden is met, the taxpayer has the burden of proving that delinquent filings did not stem from willful neglect and that the taxpayer had reasonable cause for late filing. See <u>United States v. Boyle</u>, 469 U.S. 241 (1985); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). To prove reasonable cause, a taxpayer must show that he or she exercised ordinary business care and prudence but nevertheless could not file the return when it was due. <u>Crocker v. Commissioner</u>, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

II. <u>Charitable Contribution</u>

Petitioner claimed a charitable contribution deduction of $435,925 on his 1998 tax return as "real estate forfeiture". Respondent argues that petitioner has not established a valid

charitable contribution for this amount during 1998.  We agree with respondent.  We hold petitioner may claim only $12,713.28 as a charitable contribution deduction on his 1998 tax return.

Petitioner may donate to AHERF as per section 170(b)(1)(A)(iii).  Section 170(c) defines a charitable deduction as a "contribution or gift to or for the use of * * * (2) a corporation, trust, or community chest, fund, or foundation".

Petitioner misunderstands the nature of the installment land contract.  Under this contract, petitioner gained title to the residence from Jellico only upon completion of all payments.  Therefore, petitioner did not have title at the time of the donation.  Petitioner knew of his lack of title when he offered the donation, as his donation offered only his equity.  Equity is the amount of principal paid into ownership interests.  Schuneman v. United States, 783 F.2d 694, 701 n.8 (7th Cir. 1986).

We need not decide the complicated issue of whether improvements to the property constituted payment.  Petitioner merely claimed that he made improvements and then added the claimed value of these improvements to his deduction.  However, petitioner has offered no proof substantiating these improvements or their value.  Having failed to establish any proof of the claimed value, we hold petitioner is not entitled to any deduction for improvements made to the home.

This leaves petitioner with $384,000 in claimed equity as a contribution deduction. However, the land installment contract states that in event of default, petitioner may sue to recover principal payments only in excess of $320,000. ($1,280,000 x .25).

Petitioner maintains that he never defaulted on the contract. He contends that he made the donation before the October interest due date, fulfilling his obligation without default. In a contract, however, default occurs when a party to the agreement fails to fulfill a stated material term. Franconia Associates v. United States, 536 U.S. 129, 142-143 (2002). Petitioner failed to pay the real estate taxes as required in the contract, placing him in default. As petitioner defaulted, Jellico is entitled to 25 percent of the $1,280,000 purchase price, or $320,000, per the contract. This leaves petitioner with $64,000 in remaining equity ($384,000 - $320,000). Of this sum, Jellico is entitled to deduct the final interest payment and the unpaid property taxes as damages. This amounts to $51,286.72. Therefore, petitioner's remaining equity and actual charitable contribution is $12,713.28 ($64,000 - $51,286.72).

III. Theft Loss Deductions

Section 165 grants a taxpayer a deduction of any loss sustained during a taxable year as a result of theft. Sec. 165(c)(3), (e). In order to claim this deduction, a taxpayer

must prove a theft occurred.  Elliott v. Commissioner, 40 T.C. 304, 311 (1963); Davis v. Commissioner, T.C. Memo. 2005-160 (2005).  Petitioner claims a theft loss of $2,221,668 on his 2000 tax return relating to the value of employee benefits.  This value stems from (1) a life insurance policy with Pacific Life, (2) a life insurance policy with Equitable Life, and (3) the funds in petitioner's KEYSOP account.  Petitioner maintains AHERF unlawfully converted these funds, resulting in a theft.

We find that petitioner has failed to prove a theft of the life insurance policies occurred.  AHERF was entitled to a right of corporate recovery on the policies, allowing it to reclaim the amounts paid in premiums upon the policyholder's death or termination.  AHERF reclaimed the insurance policy premiums only after petitioner's employment was terminated.  Further, petitioner admits that he assigned to AHERF all his rights under the insurance policies in return for KEYSOP funding.  Essentially, petitioner did not own the policies.  Accordingly, petitioner failed to establish the theft of any value with respect to the policies.

Petitioner likewise may not claim a theft loss deduction for his KEYSOP account.  At the time of his termination in June 1998, petitioner's account had a balance of $2,062,452.  Petitioner also had an outstanding loan from PNC Bank cosigned by AHERF for approximately $2.2 million.  Upon petitioner's termination, PNC

Bank immediately demanded full payment of the loan balance.  In response, AHERF issued a check for $1,516,170.97 from petitioner's KEYSOP account to repay the balance of the loan (in addition to using funds from the cashed-out insurance policies).  AHERF's check required signatures by both petitioner and PNC Bank in order to be cashed.  Although it was perhaps not as petitioner would have liked, AHERF did issue payment from his KEYSOP account to discharge petitioner's debt, conferring a benefit on petitioner.  Thus, AHERF did not make a conversion of petitioner's funds, a requirement to claim a theft loss deduction.  See Sperzel v. Commissioner, 52 T.C. 320, 328 (1969) ("But the word 'theft' extends only to the 'criminal appropriation of another's property to the use of the taker.'" quoting Edwards v. Bromburg, 232 F.2d 107, 110 (5th Cir. 1956)).

AHERF also structured employee KEYSOP accounts so that it had the right to reclaim any funds in the accounts in event of bankruptcy or insolvency.  AHERF filed a petition for bankruptcy under chapter 11 and reclaimed petitioner's remaining KEYSOP funds 1 month after petitioner's termination.  Petitioner acknowledged and stipulated he knew of AHERF's rights to reclaim the funds and may not therefore claim a theft loss on those funds.  We hold that petitioner has failed to prove theft of

these funds occurred.  As such, we hold petitioner is not entitled to any theft loss deductions from the value of his life insurance policies or his KEYSOP account.

IV.  GTG Business Expense Deductions

Petitioner is the sole shareholder of GTG, an S corporation that trades in raw materials.  Petitioner claimed several business deductions for expenses related to the payment of rent in 1999 as well as worldwide travel, meals, and entertainment in both 1999 and 2000.

Section 162(a) authorizes a taxpayer to deduct ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business.  Section 1.162-1(a), Income Tax Regs., provides that "Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business".  Deductions are a matter of legislative grace, and petitioner must prove his entitlement to the deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; see also Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930) (where a taxpayer claims a business expense but cannot fully substantiate it, the Court may approximate the allowable amount).

In addition, for any expenses related to travel or entertainment, section 274(d) provides:

> SEC. 274(d).  Substantiation Required.--No deduction or credit shall be allowed--

                *       *       *       *       *       *       *

          unless the taxpayer substantiates by adequate records
          or by sufficient evidence corroborating the taxpayer's
          own statement (A) the amount of such expense or other
          item, (B) the time and place of the travel,
          entertainment, amusement, recreation, or use of the
          facility or property, * * * (C) the business purpose of
          the expense or other item, * * *

     The requirements of section 274(d) are designed to ensure

taxpayers maintain records and documentation sufficient to

substantiate each expense claimed as a deduction.  See Vanicek v.

Commissioner, 85 T.C. 731, 742-743 (1985).  Without business

records or other proof to substantiate that those expenses were

incurred for business purposes, a taxpayer is not entitled to

such deductions.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

     Petitioner has presented no evidence concerning any rent

payments paid by GTG for 1999.  Thus, without any evidence to

substantiate the claimed expenses, we find that petitioner is not

entitled to any rent expense deduction in excess of the $2,850

allowed by respondent.

     With respect to the travel and entertainment expenses for

both 1999 and 2000, petitioner's evidence consisted of financial

records in the form of copied receipts, bills, credit card

statements, and a single expense report from a GTG employee.

Petitioner did not offer any testimony as to the business purpose

of any of the expenses noted in the financial records.  For

example, while the expense report vaguely listed several costs,

it provided no details as to the purpose of these costs, other than that they were incurred in Ghana. Therefore, petitioner's documentation did not fulfill the section 274(d) requirements. Thus, we hold that petitioner is not entitled to any GTG travel, meal, and entertainment deductions, beyond the $474 allowed by respondent for 1999, pursuant to section 274(d).

V. Additions to Tax

The parties stipulated that petitioner filed his return for tax year 1998 on June 21, 2000, his return for tax year 1999 on February 28, 2001, and his return for tax year 2000 no earlier than April 14, 2002. Section 6651(a)(1) imposes an addition to tax for failure to file tax returns on time unless it is shown that the failure was due to reasonable cause, and not willful neglect. The stipulation of the parties has met respondent's burden of production. Petitioner then bears the burden to show reasonable cause for late filing. See Marrin v. Commissioner, 147 F.3d 147, 152 (2d Cir. 1998) ("Generally, factors that constitute 'reasonable cause' include unavoidable postal delays, death or serious illness of the taxpayer or a member of his immediate family, or reliance on the mistaken legal opinion of a competent tax adviser, lawyer, or accountant that it was not necessary to file a return."), affg. T.C. Memo. 1991-24.

In this case, petitioner offered no testimony or other evidence that would support his argument that a reasonable cause

existed for his late filing.  Petitioner claims constant transit and relocations as his reasonable cause for late filing.  We are not convinced by this argument.  Thus, with no evidence probative of reasonable cause, we conclude that petitioner is liable under section 6651(a)(1) for additions to tax for failure to timely file his Federal income tax returns for 1998, 1999, and 2000.

VI.  Accuracy-Related Penalties

Respondent also determined that petitioner is liable under section 6662(a) for accuracy-related penalties for tax years 1998 and 1999.  Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment to which section 6662 applies.  Section 6662 applies to the portion of an underpayment of tax which is attributable to, among other things, negligence or intentional disregard of rules or regulations, a substantial understatement of income tax, or a substantial valuation misstatement.  See sec. 6662(b)(1)-(3).  Section 6662(c) defines "negligence" as "any careless, reckless, or intentional disregard."  See also Hansen v. Commissioner, 820 F.2d 1464, 1469 (9th Cir. 1987) ("Intentional disregard occurs when a taxpayer who knows or should know of a rule or regulation chooses to ignore the requirements.").

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for

that portion and the taxpayer acted in good faith with respect to that portion.  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

In this case, the claimed charitable contribution deduction in 1998 was aggressive and bears scrutiny, but we believe petitioner claimed the deduction in good faith based upon his knowledge of the facts and understanding of the law.  This is not a valuation case where, under section 6664(c)(2), the reasonable cause exception would not be available unless the taxpayer relied on a qualified appraisal and made a good faith investigation of the property's value.  The value of the property has always been known, $1,280,000.  Petitioner merely misunderstood his interest in the property according to the purchase agreement with Jellico. We find this misunderstanding to have been in good faith.

With respect to all other 1998 and 1999 items, we find petitioner's claims to be reasonable given his difficult circumstances at the time the tax returns were filed. Petitioner, once the president and CEO of a health care organization, had lost his job, his house, and his interest in a deferred compensation account, and was recently divorced.  Thus, given these difficult circumstances and petitioner's limited knowledge of the tax laws, we find that the claimed deductions

were made with reasonable cause and in good faith.  Accordingly, we do not sustain the imposition of accuracy-related penalties for the tax years 1998 and 1999.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.